## Barrett's Estate.

*Trusts and trustees—Wills—Construction—Maintenance of cestui que trust—Payment of principal and income.*

1. Testator directed as follows: "I devise in trust five thousand dollars for my nephew D., and appoint my sister and my brother to administer this trust with full power to spend said money, principal and interest, in any way and at any time they may deem proper for the benefit of said D." D. was a minor living with his mother who had no estate of her own and who had remarried. *Held,* that the mother had a right to invoke the aid of the orphans' court to compel the trustees to provide food and clothing for her son out of the trust fund.

2. In such a case oral instructions given by the testator in his lifetime to the trustees, to accumulate income, are immaterial and will not be considered.

ᵗArgued Oct. 23, 1912. Appeal, No. 153, Oct. T., 1912, by Charles B. Barrett and Helen C. Barrett, Trustees, from decree of O. C. Phila. Co., April T., 1911, No. 125, directing payment of money in Estate of Joseph D. Barrett, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Petition to pay over money.

DALLETT, P. J., filed an opinion which was in part as follows:

By his will the testator provides as follows:

"I devise, in trust, $5,000.00 for my nephew, Donald Barrett, son of my deceased brother, Edwin J. H. Barrett, and appoint my sister Helen C. Barrett and my brother Charles B. Barrett trustees, to administer this trust, with full power to spend said money, principal and interest, in any way, and at any time that they may deem proper, for the benefit of said Donald Barrett. In the event of his death any unspent portion of the Five thousand dollars or of the income therefrom, shall revert to and form part of my residuary estate."

The cestui que trust is a minor five years of age and lives with his mother and stepfather.

The petitioner, the mother, asks that the income derived from his trust estate be paid to her for his support.

The respondents refuse to so expend income, averring that the testator orally instructed them to accumulate income, unless an emergency should arise, or an expenditure be desirable for the education of the minor, but in no event to make any payments to the petitioner.

\*      \*      \*      \*      \*      \*      \*      \*

Presuming therefore that the income to be received by the respondents will approximate $250 per annum we think for the present an expenditure of $4.00 a week for the maintenance of the minor would be proper.

The prayer of the petitioner is therefore granted to the extent that the respondents are directed to pay that amount to the petitioner until further order.

*Error assigned* was the decree of the court.

*Thomas Raeburn White*, for appellants.—The cases in Pennsylvania in their chronological order which bear upon the question of the control of the discretion of a testamentary trustee, are as follows: Wilson's Estate, 2 Pa. 325; Chew v. Chew, 28 Pa. 17; Wistar's Case, 2 Phila. 377; Erisman v. Poor Directors, 47 Pa. 509; Pulpress v. Methodist Episcopal Church, 48 Pa. 204; Naglee's Estate, 52 Pa. 154; Keyser v. Mitchell, 67 Pa. 473; Williams' App., 73 Pa. 249; Ingle's Est., 76 Pa. 430; Clark's Estate, 19 Phila. 23; Allison's Estate, 11 Pa. C. C. Rep. 18; Lafferty's Estate, 20 Pa. C. C. Rep. 632; Society of Cincinnati's App., 154 Pa. 621; Baeder's Estate, 190 Pa. 614; Beaumont's Estate, 195 Pa. 1; Geiger's Estate, 9 Pa. Dist. Rep. 457; Jones' Estate, 12 Pa. Dist. Rep. 113; Bailey's Estate, 208 Pa. 594; Severns's Estate, 211 Pa. 68; Gould's Estate, 19 Pa. Dist. Rep. 576; McGee's Estate, 20 Pa. Dist. Rep. 589.

The above-cited cases are believed to include all of

value in Pennsylvania on the point. They fully sustain our position that where, as here, the main object of the testator was to secure the judgment of his trustees as to how and when his gift should be used for the benefit of the beneficiary, and he has given them full power and made their discretion absolute, the court will not and ought not to interfere.

*G. Von Phul Jones,* for appellee.—The provisions in a will creating a trust cannot be altered or varied by oral testimony: Williams' Appeal, 73 Pa. 249.

The oral instructions if made part of the will would violate the provisions of the Act of April 18, 1853, P. L. 503, making void all accumulations of income beyond the minority of the cestui que trust: Sponsler's Appeal, 107 Pa. 95; Kinike's Estate, 29 W. N. C. 163.

The words creating the trust do not empower the trustees to decline to make any payment on behalf of the minor or give them any absolute discretion in the matter: Haynes v. Carr, 70 N. H. 463 (49 Atl. Repr. 638); Clark's Estate, 4 Pa. C. C. Rep. 611; Stewart v. Madden, 153 Pa. 445; Geiger's Estate, 9 Pa. Dist. Rep. 457; Severns's Estate, 211 Pa. 68.

The trustees are abusing their discretion: Severns's Estate, 211 Pa. 68.

The mother is the proper person in whose favor to make the order: Boyle's Estate, 20 Pa. Dist. Rep. 1119; Mc-Gee's Estate, 20 Pa. Dist. Rep. 589; Pleasonton's Estate, 232 Pa. 381; Palumbo's Estate, 15 Pa. Dist. Rep. 188.

OPINION BY HEAD, J., February 27, 1913:

To ascertain the powers and duties of the respondent trustees we must look to the language of the testator's will wherein he created the trust and appointed those who were to administer it. We have no other source of information at our disposal. Manifestly we cannot now give to loose expressions or oral declarations, made at some indefinite time by the testator, a force and legal

significance which he denied to them when he declined to incorporate them in his will.

The important clause of the will is brief, viz.:

"I devise in trust $5000.00 for my nephew Donald Barrett . . . . and appoint my sister . . . . and my brother . . . . to administer this trust with full power to spend said money principal and interest, in any way and at any time they may deem proper, for the benefit of said Donald Barrett."

Here then we have a clear declaration that the beneficiary of the trust fund, the chief object of the testator's bounty, was his nephew, then and yet a child of tender years. The trustees named, are "to administer this trust." Naturally the powers conferred and the duties imposed on them would be those reasonably likely to accomplish the main intent of the testator. The language employed for that purpose points directly to the conclusion that the primary intent of the testator, already noted, was still dominant in his mind. "With full power to spend said money, principal and interest in any way and at any time [they may deem proper] for the benefit of said Donald Barrett." Excluding from our consideration, for the moment, the four words bracketed, and confining our attention to the remainder of the clause, as a whole, the general scheme and intent of the testator plainly appear in language neither obscure nor ambiguous. The trust fund was "for" the child. The respondents were to "administer" the trust fund "for" him. To accomplish that object and effectuate that purpose they were expressly authorized "to spend said money, principal and interest . . . . in any way and at any time" for his benefit. Obviously then when it is made to appear that the expenditure of some portion of the trust fund is necessary "for the benefit" of the cestui que trust, if the trustee may successfully deny any obligation to make that expenditure, some obstacle has arisen to thwart the main intent of the testator in creating the trust.

It is argued that by the use of the words quoted in

brackets, the testator intended to repose in the trustees a certain discretion, the proper exercise of which the courts should not control. This cannot be denied. But it was not the absolute and unlimited discretion so earnestly contended for by the able counsel for the trustees. When the testator declared that he created the trust fund "for" Donald Barrett, he marked a boundary line within which his trustees were to act; beyond which they had no power to go. When he gave them express authority to expend the income and, if need be, the principal "for the benefit" of his nephew, he again defined the zone within which the granted powers were to become active, the conferred discretion to be exercised. In a word then the discretion reposed in the trustees was a legal one, to be freely exercised by them within the limits marked by the testator, and always for the purpose of executing his intent in creating the trust. It is the right and the duty of the orphans' court to supervise the exercise of such discretion so that the administration of the trust shall be in harmony with the will of its creator.

In Erisman v. Directors of the Poor, 47 Pa. 509, the trustee had a discretion in the first instance to determine the existence of "the urgent necessity" which would warrant the application of the principal fund to the use of the cestui que trust. The discretion of the trustee was held to be a legal one subject to the supervisory power of the courts. In Stewart v. Madden, 153 Pa. 445, the nature of the trust and of the discretion conferred upon the trustee was thus stated by Mr. Justice STERRETT: "She (testatrix) expressly gave her trustee discretionary power to use 'so much of the principal' of the trust estate as he 'shall deem necessary for her benefit.'" Here is a legal discretion which the court might, on presentation of a proper case, have constrained for the benefit of Mrs. Jackson" (cestui que trust). This case is practically "on all fours" with the one in hand and its authority must be recognized.

Did the petitioner here present a proper case to invoke

the aid of the court? She averred she was the mother of Donald Barrett. That she had no estate from his father or any other source from which she could maintain and support him. That she had married again. That the trust fund had been in the hands of the trustees for some months and they had received from its income upwards of $100. That she had applied to them for aid for the support of the child but had been refused. That he was thus left dependent on the charity of his stepfather, etc. The trustees, answering, were not able to deny any of these facts. They justified their refusal to provide for the support of the child on the ground that their discretion under the will was absolute. That they could, if they chose, decline to expend any of the fund even for the most absolute necessities of the child. That they felt morally bound to follow some alleged oral instructions of the testator to the effect that the interest should accumulate until the child had reached the age of twenty-five years when, at their discretion, it might be applied in certain stated ways, etc.

Conditions may arise where the judgment of men, exercised in the best of faith, might differ as to whether a proposed expenditure at a particular time would be "for the benefit" of another or not. But when such expenditure is shown to be necessary to provide a beneficiary of a trust fund with food and clothing, those conditions do not exist. As the record now stands we must hold that the decree of the learned court below was right, or we must give to the language of the testator some meaning it would not have in the common understanding of men.

Decree affirmed.