**Goodell Estate**

*John D. Trainer,* for accountants.

*Donald R. Price,* for Commonwealth.

*Thomas F. J. MacAniff,* for Continental Bank and Trust Company, Trustee for Kathryn F. Goodell.

SATTERTHWAITE, P. J., November 29, 1972.— The first and final account of Hilda D. Goodell and William F. Goodell, executors of the estate of said decedent, was presented to the court for audit, confirmation and distribution of ascertained balances on January 3, 1972, as advertised according to law. Said audit was duly and successively continued in open court to March 6, 1972. Due proof of appropriate notice thereof to all parties legally interested in said estate appears in the record.

A hearing with respect to the Commonwealth's claim hereinafter discussed at length was held on October 2, 1972.

Said account has been examined and audited by the court. Balances for distribution shown thereby include principal in the amount of $80,400.95, composed of shares of stocks and mutual funds totalling $24,725.64 (at inventory), a bank savings account of $6,000, real estate at $24,500, personal property in kind at $2,935, a Federal savings and loan association savings certificate at $20,000 and cash of $2,240.31, and income in the amount of $767.58 in cash. Said respective balances for distribution appear to have been correctly computed and stated on the accounting filed.

Accountants submitted to be debited to income with $1,260.32 for additional dividends and interest received since the closing date of the accounting. Accountants requested and are hereby allowed additional credit against principal in the amount of $10,353.50

for decedent's medical bill balance ($66.50), family exemption ($1,500), executors' commissions ($4,637), counsel fees ($4,000), and administration expenses ($150), and against income in the amount of $168.45 for Pennsylvania ($41.90) and United States ($126.55) income taxes, all paid since the closing date of the accounting. The respective balances for distribution shown in the account are hereby revised accordingly.

Pennsylvania transfer inheritance tax has been paid in full, and liability therefor on the appraisment filed on October 28, 1971, has been discharged, as per certificate of the register attached to the petition for adjudication.

The problems for adjudication in this audit arise out of the claim of the Commonwealth for compensation in the amount of $10,166.48 for the care and maintenance of decedent's adult daughter, Kathryn Frances Goodell, as a patient at Norristown State Hospital in decedent's lifetime. The amount of the claim is not disputed, but liability therefor was originally denied by accountants, with an alternative contention that if the testamentary estate should be liable, then reimbursement or contribution by reason thereof should be allowed against the distributive share bequeathed in trust by decedent for the benefit of his said daughter Kathryn during her lifetime.

Decedent's will, after directing payment of debts and making certain specific bequests and a devise of real estate, gives that residue one-third to his surviving widow Hilda Goodell, outright; one-third to his adopted son William Goodell, outright; and further directs:

"A one-third (⅓) share unto CONTINENTAL BANK and WILLIAM GOODELL, in trust, to hold the principal of said trust, to invest and reinvest the same, and to pay the income and so much of the prin-

cipal as (sic) of this trust as Trustees, in their sole discretion, shall deem necessary for the maintenance, health, support and care of my daughter, KATHRYN FRANCES GOODELL, for her lifetime, and upon her death to transfer, convey and pay over the balance of principal and accumulated income, if any, to my adopted son, WILLIAM GOODELL."

The will also contains a spendthrift clause, directing that

"All the shares of principal and income hereby given shall be free from anticipation, assignment, pledge or obligations of beneficiaries and shall not be subject to any execution or attachment."

At the audit hearing held on October 2, 1972, counsel for accountants, counsel for the Commonwealth and counsel for Continental Bank as one of the trustees for the one-third share of the residue as aforesaid, stipulated at the bar of the court that the Commonwealth's claim should be allowed by the court, but only to the extent of 75 percent thereof, leaving for adjudication the question of whether it should be charged against the estate as a general claim or should be collectible, so far as the respective beneficiaries of the estate are concerned, only out of the one-third share to be held in trust for the daughter's life benefit. No evidence was introduced other than such stipulation, and argument briefs were submitted in support of the respective positions so indicated.

The claim of the Commonwealth as so stipulated, is hereby accordingly allowed in the amount of $7,-624.86. Arithmetical calculation of the account balances and additional receipts and credits hereinabove mentioned would indicate that, after deduction of the specific devise and bequests, there would be available for the residuary beneficiaries (before consideration of the Commonwealth's claim) principal and income

aggregating $44,471.90. Thus, the question presented boils down to whether the $7,624.86 claim should be paid out of the net $44,471.90 residuary estate before division into thirds, or whether it should be taken solely out of the one-third trust share of $14,823.96.

There can be no question but that liability in the first instance rests upon Kathryn Frances Goodell personally for her own maintenance and support in the Norristown State Hospital: Section 501 of the Mental Health and Mental Retardation Act of October 20, 1966, Special Sess., P. L. 96, 50 PS §4501. It would also seem unquestioned and tacitly assumed by all concerned in the within litigation, although there was no direct evidence on the subject, that Kathryn Frances Goodell does not have the wherewithal to discharge this liability in her own behalf and out of her own resources. Compare Commonwealth v. Heiser, Administratrix, 53 D. & C. 2d 124, 126 (1971). Accordingly, the mandate of section 502 of the act, 50 PS §4502, comes into play and liability is thereby imposed "upon any person owing a legal duty to support" such a state hospital patient. The latter requirement is explicated by the provisions of section 3 of the Act of June 1, 1915, P. L. 661, as amended, 71 PS §1783, as follows in relevant part:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any . . . [state hospital] . . . and who is legally able so to do, shall be liable to pay for the maintenance of any such person . . ."

The Act of 1915 was ostensibly repealed by section 1001 of the Mental Health Act of June 12, 1951, P. L. 533 (itself now repealed), but only "insofar as inconsistent with the provisions of [the 1951 Act]." It has been held that there is no inconsistency between the Act of 1951 and the above quoted provisions of the Act

of 1915, and that therefore the latter is still in effect and unrepealed: Rabe Estate, 437 Pa. 72, 77 (1970).

Under this legislation decedent, as a parent, would have been liable in his lifetime for his daughter's maintenance in the State hospital, and his estate, being quite apparently "legally able so to do," is accordingly responsible to discharge this lifetime liability after his death.

Accountants, at the present time at least, do not seem seriously to challenge the conclusion that the within testamentary estate is liable directly to the Commonwealth for the State hospital care and maintenance furnished decedent's daughter during his lifetime. They do contend, however, that the impact of this liability should rest solely and exclusively upon that portion of the estate which they characterize as the daughter's distributive share, citing the equitable principles enunciated in Bole's Estate, 316 Pa. 179 (1934), to the effect that since the patient's liability was primary and the relative's responsibility under section 3 of the Act of June 1, 1915 was intended as a legislative form of suretyship therefor, the patient should not in good conscience be permitted to receive his full distributive share of his deceased parent's estate without diminution on account of such payments to the Commonwealth on his behalf, and the estate should accordingly be reimbursed to the extent thereof out of the patient's distributive share. See also McIlwain Estate, 4 Fiduc. Rep. 200 (1954); Cemini Estate, 22 D. & C. 2d 556 (1960); Barna Estate, 26 D. &. C. 2d 369 (1961); Kerchner Estate, 14 Fiduc. Rep. 645, 34 D. & C. 2d 619 (1964).

The only difficulty with this position here is that under the present will no share of principal is distributable to the patient Kathryn Frances Goodell. While the trust third of the residue is for her present benefit,

nevertheless, she is a life beneficiary only, with no interest in principal as a matter of legal right or ownership. Therefore, the reimbursement rationale of the above cases can have no application beyond her right to one-third of the presently distributable income. Accordingly, the entire balance of income in accountants' hands as executors as of the date of this adjudication is hereby awarded to Hilda Goodell and William Goodell, to the exclusion of the trust for Kathryn Frances Goodell, as a partial reimbursement on account of the liability of the said Kathryn Frances Goodell for her own support and maintenance in Norristown State Hospital prior to decedent's death. Such income share is the only property legally attributable or presently awardable to Kathryn Frances Goodell which is presently before the court and which might be awarded in accordance with the foregoing equitable principles.

This adjudication makes no determination of any other or further manner, if any there be, by which said Hilda Goodell and William Goodell might obtain reimbursement for the balance of such liability. Compare the final reported paragraph of Judge Taxis' adjudication in Rhoads Estate, 30 D. & C. 2d 742, 746 (1963), involving a similar situation. Whatever may be the responsibilities of the trustees after receiving their distributive one-third share of principal, in the exercise of their discretionary power to invade principal for the future maintenance, health, support and care of Kathryn Frances Goodell, it would seem that they would have no liability with respect to such questions arising out of her situation *prior* to the creation of the trust itself: Walters' Case, 278 Pa. 421 (1924).

It would also seem that accountants, by failing to list the Commonwealth's claim herein as a lifetime obligation of decedent and hence a deduction from the

taxable estate, have apparently overpaid the Pennsylvania inheritance tax and should be entitled to a refund. It is hereby directed that accountants take appropriate steps to rectify this error.

No unpaid claims against the estate were presented.

No other questions for adjudication were stated in the petition for adjudication, nor were any apparent to the court from the record.

Subject as aforesaid, the net ascertained balances for distribution are hereby awarded as suggested by the last paragraph of the petition for adjudication pursuant to the will of decedent, a copy thereof attached to the petition for adjudication being incorporated herein by reference.

A schedule of distribution in conformity to the within adjudication and to implement the foregoing awards shall be filed by accountants in due course.

The account is hereby confirmed, and it is ordered and decreed that Hilda D. Goodell and William F. Goodell, executors as aforesaid, shall make and pay the distributions herein awarded forthwith upon the absolute confirmation of the schedule of distribution herein directed to be filed.

And now, November 29, 1972, the within adjudication is directed to be filed and is hereby confirmed nisi.